**In re Wesley R. ENGLAND, Debtor.**

**Wesley R. ENGLAND, Appellant,**

v.

**FDIC and Abrams Centre National Bank, Appellees.**

**Civ. A. No. 3–91–1680–H.**
**Bankruptcy No. 391–31371–HCA–11.**

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 25, 1991.

---

**496**

Philip I. Palmer, Jr., Palmer & Palmer, P.C., Dallas, Tex., for debtor.

Marilyn Chambers, Dallas, Tex., for appellee F.D.I.C.

Holly B. Guelich, Lusky and Geulich, P.C., Dallas, Tex., appellee for Abrams Centre Nat'l Bank.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court is an appeal from the Order of the United States Bankruptcy Court for the Northern District of Texas, entered June 26, 1991. The instruments before the Court are Appellant's Brief, filed September 4, 1991; Appellees' Brief, filed September 19, 1991; and Appellant's Reply, filed September 27, 1991.

### Background

The facts relevant to the present appeal are undisputed. On October 16, 1990, Appellant England and his wife sold their Cedar Hill, Texas home and the accompanying 6.248 acres of land for $220,000.00. The $220,000.00 came in the form of $10,-000.00 cash and a $210,000.00 Real Estate Lien Note secured by a Warranty Deed with Vendors Lien and Deed of Trust. On October 31, 1990, England and his wife moved to a ranch that they owned in or near Hico, Texas ("Hico Ranch").

On November 2, 1990, England voluntarily filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. Debtor England then filed Schedules claiming two exemptions under the Texas Property Code that form the basis of this appeal. To wit, England claimed the Hico Ranch as a rural homestead exemption, citing section 41.002(b), and the $210,000.00 Real Estate Lien Note as an exemption for proceeds of a sale of a homestead pursuant to section 41.001(c). *See* Tex. Prop.Code Ann. §§ 41.001–02 (West Supp.1991).

England's creditors challenged the exempt status of the proceeds on the ground that England was, in effect, claiming two homestead exemptions. The bankruptcy court entered Findings of Fact and Conclusions of Law on June 26, 1991. The bankruptcy court concluded that England was not entitled "to claim the Real Estate Lien Note from the sale of the Cedar Hill Home as exempt under Tex.Prop. Code (Ann.) § 41.001(c)" and therefore ruled that the Note and Deed of Trust were property of the estate. Conclusion of Law # 18.

### Standard of Review

The Court reviews the bankruptcy court's findings of fact under the clearly erroneous standard, *see* Bankr.R. 8013; *In re Monnig's Dep't Stores, Inc.,* 929 F.2d 197, 200–01 (5th Cir.1991), while the bankruptcy court's conclusions of law are sub-

ject to de novo review. *See In re Kolstad,* 928 F.2d 171, 172 (5th Cir.1991); *Lawler v. Guild, Hagen & Clark, Ltd.* ("*In re Lawler*"), 106 B.R. 943, 952 (N.D.Tex.1989). Because the facts relevant to appeal are undisputed, the only subjects of review are the bankruptcy court's conclusions of law. De novo review requires the Court to make a judgment independent of the bankruptcy court's, without deference to that court's analysis and conclusions. *See In re Lawler,* 106 B.R. at 952 (citing *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1210 (7th Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984)).

### Discussion

The legal issue on appeal is whether the Texas Property Code allows England to claim both the Hico Ranch and the proceeds from the sale of the Cedar Hill home as exemptions. Both parties correctly rest their arguments on interpretation of section 41.001.[1] That section reads as follows:

Interests in Land Exempt from Seizure

(a) A homestead and one or more lots used for a place of burial of the dead are exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property.

(b) Encumbrances may be properly fixed on homestead property for:

(1) purchase money;

(2) taxes on the property; or

(3) work and material used in constructing improvements on the property if contracted for in writing before the material is furnished or the labor is performed and in a manner required for the conveyance of a homestead, with joinder of both spouses if the homestead claimant is married.

(c) The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale.

Tex.Prop. Code Ann. § 41.001 (West Supp. 1991).

England's position is that Paragraphs (a) and (c) are in the disjunctive, which allows a Chapter 11 debtor to claim exemptions under both at the same time. Appellees FDIC and Abrams Centre National Bank contend that only one exemption, from either Paragraph (a) or Paragraph (c), may be claimed under section 41.001. The question presented by these positions has not yet been addressed by the courts.

■ It is well established that Texas law permits a debtor to claim only one homestead as an exemption. *See, e.g., In re Neale,* 274 F.Supp. 969, 974 (N.D.Tex. 1967) (explaining that debtor cannot claim two homestead exemptions even when apportioning residence between the two); *R.B. Spencer & Co. v. Green,* 203 S.W.2d 957, 959 (Tex.Civ.App.—El Paso 1947, no writ) (stressing that rural and urban homesteads may not be claimed at the same time). On this point Appellant and Appellees agree. *See* Appellant's Brief at 4; Appellees' Brief at 8. The issue is whether England's Paragraph (c) claim for the proceeds from the sale of the Cedar Hill home amounts to a claim for a second homestead exemption. If it does, it may not be claimed simultaneously with the Paragraph (a) homestead exemption.

It is axiomatic that the Court's initial point of inquiry is the language of section 41.001. *See Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985). Because they are not separated by "or" or "and", Paragraphs (a) and (c) could be read as listing independent exemptions, the former a homestead exemption and the latter a non-homestead exemption. England urges the Court to adopt this reading.

On the other hand, section 41.001 is titled, "Interests in Land Exempt from Sei-

---

1. Although England cited Section 41.002 of the Texas Property Code in seeking to exempt the proceeds from the sale of his Cedar Hill home, that section merely defines what constitutes a homestead under Texas law. Exemptions, including those for homesteads, are addressed in section 41.001. *See* Tex.Prop. Code Ann. §§ 41.-

001–02 (West Supp.1991). Prior to enactment of the current versions of sections 41.001 and 41.002 in 1985, the homestead and "proceeds" exemptions were addressed in an earlier version of section 41.002. *See* Tex.Prop .Code Ann. §§ 41.001–02 (West 1984) (amended 1985).

zure," and Paragraph (a), in listing more than one such interest, could be read as the exhaustive list of those interests. Under that interpretation, Paragraphs (b) and (c) explain the conditions for, and modifications of, one of the exemptions listed in Paragraph (a), the homestead exemption. Also consistent with that interpretation, Paragraph (c)'s "(t)he homestead claimant's proceeds of a sale of a homestead" language implies that a claim made pursuant to that paragraph is a homestead exemption claim.

■ Based on the plain language of section 41.001, the Court finds the second interpretation more compelling.[2] The Court concludes that the plain language of section 41.001 suggests that the Paragraph (a) homestead exemption and the Paragraph (c) exemption for proceeds from the sale of a homestead represent alternative means of claiming the same exemption and may not be claimed at the same time.

This interpretation is consistent with the available evidence of the legislative intent behind Paragraph (c).[3] Significantly, the Texas Court of Appeals recently explained in *Taylor v. Mosty Bros. Nursery, Inc.* that,

> (s)ection 41.001(c) of the Texas Property Code has the effect of giving homestead protection to the proceeds of a voluntary sale of a homestead for a period of six months after the date of the sale. Realizing that there might be instances in which a family would need to sell the family homestead, the Texas Legislature acted to preserve the homestead protection afforded by the Texas Constitution in such cases by exempting sale proceeds from creditors' claims for six months.

777 S.W.2d 568, 570 (Tex.App.—San Antonio 1989, no writ) (referring to Tex. Const. art. XVI, §§ 50–52). The court, citing *Ingram v. Summers*, 29 S.W.2d 447, 450 (Tex.Civ.App.—Austin 1930, writ dism'd), then concluded that, "(t)he six-month provision was enacted in order that the proceeds might be reinvested in another homestead." *Id.*

The court in *Ingram v. Summers*, discussing Article 3834 of the Revised Civil Statutes of Texas, the predecessor to Paragraph (c),[4] concluded that,

> (t)he Legislature evidently realized that conditions might and probably would arise when it would be to the interests of the family that the homestead should be sold, and if the proceeds of such a sale was (sic) in no way protected, then the beneficent provisions of our Constitution would be of no avail and the protection afforded the family would be lost.

29 S.W.2d at 450; *see also* 43 Tex.Jur.3d *Homesteads* § 11 (1985) (relying on *Ingram* in stating that, "(t)he legislative purpose in granting to the homestead claimant the right to retain the proceeds of a sale for six months is to give the claimant an opportunity to reinvest the funds received in another homestead").

Like the court in *Ingram*, the court in *Gaddy v. First Nat'l Bank of Beaumont* interpreted the legislative intent behind Article 3834. 283 S.W. 277, 280 (Tex.Civ. App.—Beaumont 1923, no writ). That

---

2. Given that alternative interpretations of section 41.001 consistent with existing case law are available, the Court rejects, and none of the parties have urged, a reading of section 41.001 that allows a debtor to claim two homestead exemptions. When alternative interpretations of a statute are available, one consistent with existing law and one inconsistent, in the absence of legislative intent favoring the latter, the Court will choose the former. *See infra* pp. 498–99 and note 3; *cf. Public Citizen v. United States Dep't of Justice,* 491 U.S. 440, 452–55, 109 S.Ct. 2558, 2565–67, 105 L.Ed.2d 377 (1989) (emphasizing that the courts should not accept even clear statutory language when it contradicts a Congressional legislative purpose).

3. The Texas legislature, itself, supplied no evidence of the intent behind Paragraph (c). In the absence of evidence from the legislature, the Court looks to other sources. In this case, the relevant information comes from the Texas state courts.

4. Article 3834 of the Revised Civil Statutes of Texas, enacted in 1897, was the substantive predecessor to the previous version of section 41.002(b), which, in turn, was the predecessor of the current version of section 41.001(c). *See* Tex.Prop. Code Ann. §§ 41.001 (West Supp. 1991); Tex.Prop. Code Ann. §§ 41.001–02 (West 1984) (amended 1985).

court determined that the intent was to protect a debtor's right to obtain and hold a single homestead; the proceeds were simply a means to that end:

> But later (1897) the law was amended to protect from garnishment the proceeds of a voluntary sale of a homestead for six months, thus giving reasonable time in which to invest the proceeds in another home; the intent of the law being to protect the owner in his possession and use of the homestead from forced sale of same *so long as he sees fit to continue its use as a home*, and to allow him, free from legal interference, a reasonable time, six months, in which to exchange or invest the proceeds in another home. The exemption provided was *for the homestead as such* and not the proceeds arising from voluntary sale of same.[5]

283 S.W. at 280 (emphasis in original); *see also Jones v. Maroney*, 619 S.W.2d 296, 297 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ) (following and quoting *Gaddy*, 283 S.W. at 280).

As with the plain language of section 41.001, the Court, based this time on the available evidence of legislative purpose, concludes that Paragraph (c) was intended to identify an alternative means by which a debtor might claim his or her single homestead exemption and not to create a second, entirely separate exemption for homestead sale proceeds. The Court applies section 41.001 to England's claims for exemptions with that intention in mind.

### Conclusion

England's claim for an exemption for the proceeds from the sale of his home amounts to a claim for a second homestead exemption. Therefore, the Court agrees with the bankruptcy court that England was not entitled to claim the Real Estate Lien Note from the sale of the Cedar Hill Home as exempt under section 41.001(c) of the Texas Property Code. Accordingly, the

---

**5.** Contrary to England's position, whether the debtor actually purchases another homestead with the proceeds from the sale of the first homestead is irrelevant; the opportunity to

judgment of the bankruptcy court is AFFIRMED.

SO ORDERED.

make such a purchase with the equivalent value of the first homestead is still protected. *See Ingram v. Summers*, 29 S.W.2d at 450; 43 Tex. Jur.3d *Homesteads* § 11 (1985).